G. D. ELLYSON, Appellant, v. HANNAH R. SCHOOLER, Appellee.

**Bills and notes:** WHEN GIVEN TO PREVENT CRIMINAL PROSECUTION : EVI-
DENCE. In this action upon promissory notes, the evidence is
reviewed and held to show that they were given by the wife to
prevent the criminal prosecution of her husband for an alleged
forgery.

*Appeal from Story District Court.*—HON. CHARLES E.
ALBROOK, Judge.

MONDAY, NOVEMBER 21, 1910.

ACTION to recover judgment on five notes of $600
each and to foreclose a real estate mortgage securing the
same. The defense interposed was threefold: (1) Want
of consideration; (2) duress and undue influence; (3) that
the notes and mortgage were given to prevent the criminal
prosecution of defendant's husband for an alleged forgery.
Decree for defendant. Plaintiff appeals.—*Affirmed.*

*Fitchpatrick & McCall, J. A. McCall,* and *W. S.
Ayres,* for appellant.

*McCarty & Luke,* for appellee.

EVANS, J.—The payee of the notes and the real
plaintiff in interest herein is Lewis Schooler. For conveni-
ence of discussion, we shall refer to him as the plaintiff.
The defendant, Hannah Schooler, is the wife of H. C.
Schooler. Prior to May, 1906, the plaintiff was president
of the bank of Madrid, and his son Dean Schooler was the
cashier and general manager thereof. H. C. Schooler had

previously become indebted to the bank in the sum of $10,500, for which the bank held his promisory note. H. C. Schooler was engaged in some sort of speculative enterprise in Missouri, the character of which does not definitely appear in the record. It is manifest, however, that it absorbed funds more readily than it paid dividends. The note held by the bank was practically worthless. For some years prior to this time, the defendant, Hannah Schooler, had found it precarious to rely upon her husband for the support of herself and son. She therefore purchased with her own earnings a small farm home of twenty-four acres and occupied and managed the same with her young son; the husband absenting himself from his family a large part of the time and for many months at a time.

The notes and mortgage in question in this case were executed on August 2, 1907. The mortgage covered the home property above referred to and was made subject to a mortgage of $700 already existing thereon. The amount of plaintiff's mortgage was fixed at $3,000 as being the full value of the mortgaged property over and above the incumbrance already existing. The amount of such note and mortgage was indorsed as a credit on the note of $10,500 held against the husband. There was no other consideration. The plaintiff continued to hold the note against the husband for the balance due thereon, although the defendant seems to have understood that all papers against her husband were to have been delivered to her. A part of the credit, which had been extended by the bank to H. C. Schooler and which was included in the $10,500 note, was obtained by him by means of forgery. The amount so obtained totaled about $5,000. The claim of the defendant is that this fact was made known to her on August 2, 1907. Her claim is that she was induced to execute such papers for the purpose of saving her husband from criminal prosecution and of saving her son, then fifteen years of age, from the disgrace to result to him

if his father were sent to the penitentiary. She claims that she was ill and in great mental distress, and that the influence so brought to bear upon her amounted to sufficient duress to invalidate the papers. She further claims that it was the understanding between her and the plaintiff that if she executed such papers no prosecution of her husband would follow. We will confine ourselves to a consideration of the last defense, as our conclusions thereon are determinative of the case.

There is no controversy between the parties as to any legal question involved in the case. The case turns wholly upon a question of fact. We will not extend the discussion into the details of the evidence. If the testimony of the defendant can be deemed wholly true, it is sufficient to sustain the defense that the papers were executed under an understanding, expressed or implied, that there should be no criminal prosecution of her husband for the forgery. Her testimony, however, is flatly denied by the plaintiff, and this denial is corroborated by the testimony of the plaintiff's attorney who prepared the papers. The testimony of the defendant has some corroboration in that of her sister, who arrived at the place shortly after the papers were signed. We think it must be said, also, that there are many undisputed circumstances which are strongly corrobative of the defendant. We think the circumstances indicate beyond reasonable doubt that the defendant herself understood she was saving her husband from criminal prosecution and her son from disgrace. The more doubtful question is whether the plaintiff intended that she should so understand.

Shortly after the execution of the large note by her husband in May, 1906, the cashier of the bank called upon the defendant and asked her to secure the same, which she flatly refused to do. She at that time accused the cashier of engaging in speculation with her husband .in Missouri, and she refused to become involved in it in any way. A day

or two later the attorney for the bank called upon her and renewed the effort to obtain a mortgage, but without success. On these two occasions she was told that the husband had much property in Missouri which would be approximately sufficient to pay the defendant, but that the bank desired to have Iowa security. Nothing, however, was said to her on these occasions about the forgery. According to her evidence, she first heard of the forgery on August 2d. Her husband had just returned home after an absence of fourteen months. He was charged with forgery by the plaintiff in her presence, and he admitted it. The plaintiff and his attorney both testified, however, that nothing was said to her on the subject of her husband's forgery on August 2d, nor at any other time prior thereto. The attorney of plaintiff called upon her at her home in the forenoon. He testified that she expressed herself ready and willing to give the mortgage, but that she wanted to see Dr. Schooler, the plaintiff, who had been her physician and surgeon in an illness four or five years before. The attorney thereupon returned to Des Moines, and the defendant followed on the next interurban car. She reached Des Moines about the middle of the forenoon, and went to the office of Dr. Schooler and had a conference with him. That she was in mental distress and cried much is not seriously disputed. There was no relationship between her husband and Dr. Schooler, although both bore the same surname. The substance of the contention on behalf of plaintiff is that he and his attorney found her ready and willing to make a mortgage without any pressure or inducement of any kind. This contention is not as consistent with the circumstances surrounding the defendant as is her own contention. She was under neither legal nor moral obligation to pay any part of this debt. She had refused to have anything to do with it a year before. She was then assured that her husband had much available property in Missouri with which to pay. On August

2d she was told that there was nothing to be realized from the Missouri property. The little property sought as security constituted her home and was all she had and was already incumbered for $700. Though she devoted it all to the payment, of her husband's debts, she could not thereby save him from bankruptcy.

In the light of all the circumstances appearing in the record, there is little room to doubt but that the avoidance of a criminal prosecution was the compelling motive that induced the execution of the papers by the defendant. The same circumstances are consistent with her claim that she got this understanding from the plaintiff in her conversation with him. The fair preponderance of the evidence is with her. The plaintiff through his attorney took the initiative on that day and accomplished what he sought with great ease, according to his testimony. The fact that it was accomplished with apparent ease is itself a circumstance consistent with, if not corroborative of, the defendant's version of the transaction between them. It is only fair to plaintiff to say that he had never taken any steps to prosecute the defendant's husband, and he contends that he never intended to do so. We feel constrained, however, to say that the defendant did not get this understanding from him in her conversation with him.

The decree entered below must be *affirmed.*